Case 1:22-mj-00125-RMM   Document 1-1   Filed 05/28/22   Page 1 of 3

Case: 1:22−mj−00125
Assigned To : Meriweather, Robin M.
Assign. Date : 5/28/2022
Description: Complaint W/ Arrest Warrant

**STATEMENT OF FACTS**

On May 25, 2022, the Metropolitan Police Department's ("MPD") Violence Reduction Unit ("VRU") executed a District of Columbia District Court search warrant (22-sw-147) for 1304 6th Street, NW, Apartment 401. This apartment was one of 20 residential locations searched pursuant to the warrant and is believed to have been used as a stash house by a crew distributing drugs and possessing firearms in the area of 7th and O Streets, NW, Washington, DC. During this search, officers recovered from this apartment numerous firearm magazines, including some high-capacity magazines; ammunition; one cell phone; and items commonly used for narcotics distribution, including four scales; packaging; sifters and plates with residue; gloves; and an empty bag of mannitol (a cutting agent).

On May 27, 2022, at approximately 9:13am, Witness-1 called MPD to report that a male subject, Malik SHELTON, who was possibly wanted by law enforcement, was sleeping inside of Apartment 401.[1] Witness-1 further reported that SHELTON had been in possession of a firearm the night before, but was unsure of whether SHELTON still had a firearm.

Officers entered the front of 1304 6th Street, NW, and went up to Apartment 401. Officers repeatedly knocked on the door of the apartment. Eventually, the door opened and an individual stood in the doorway. Lieutenant Ross asked that person what his name was, and the person answered "Malik SHELTON".[2] While being asked for identification, SHELTON stepped out of the apartment into the hallway and shut the door.

SHELTON had on his person a satchel that was open. In the hallway, Lieutenant Ross was able to see inside of the satchel. He saw plastic material consistent with that used to package narcotics. SHELTON was placed in handcuffs. In response to questioning, SHELTON denied that the satchel contained narcotics and also stated he did not live at the location[3]. Commander Boteler felt the satchel and asked SHELTON if he could search the bag, and SHELTON said no. While holding the bag open, Commander Boteler stated he saw drugs in the bag. From the satchel, officers recovered:

- two clear plastic bags containing a green leafy substance consistent with marijuana;
- a pill bottle with the label scratched off containing 28 pills with various imprints that appeared to be Oxycodone and 7 pills currently believed to be amphetamines;
- a powder/rock like substance weighing 9.81 grams (with packaging) that field tested positive for cocaine base;

---

[1] Witness-1 gave a birthdate for SHELTON. Witness-1 stated that Witness-1 was not sure that the last name and date of birth given were correct. The birthdate given was in fact incorrect. Witness-1 is also known to use at least crack cocaine.
[2] When processing SHELTON, his fingerprints were associated with someone named "Shane Smith." Based on the criminal history check conducted in this arrest, your affiant understands that this is an alias for SHELTON and that he as other aliases as well.
[3] During an interview in which SHELTON was asked where he lived, he stated he was homeless. He then said he got his mail on Minnesota Avenue but could not remember exactly where. He later invoked his right to remain silent upon being Mirandized. He then asked whether he had anything to do with the events that were on the news. Law enforcement responded that they could not speak to him further without his consent. SHELTON then stated words to the effect of, he had nothing to do with those events. Your affiant understands this to mean that he had nothing to do with the group selling drugs in the area of 7th and O, which was the subject of a publicized takedown on May 25.

- a white rock substance weighing 3.15 grams (with packaging) that field tested positive for fentanyl and cocaine base; and
- $756 in U.S. currency.

Based on the quantity of narcotics and the location in which SHELTON was found, it is probable that SHELTON possessed these narcotics with the intent to distribute them and not for personal use. SHELTON was not in possession of any instruments or devices consistent with consuming the cocaine or fentanyl.

Law enforcement understands that two people reside in the apartment and that SHELTON has been staying there for several months. Officers received consent to search the apartment from Witness-1. Inside the apartment was a living room. In the living room was an air mattress that Witness-1 had stated SHELTON sleeps on. Next to the mattress was an end table, and next to that was a couch. During the search on May 27, 2022, officers found under a couch cushion (specifically, the cushion closest to the armrest that was closest to the end table) a black 9mm Glock 19 firearm with a green extended magazine and switch designed to make the firearm fully automatic. The high-capacity magazine was fully loaded with 31 rounds, and the firearm had one round in the chamber. The serial number was BCKB643. On top of the end table was paperwork with Malik SHELTON's name. Additionally, during the search on May 25, officers saw shoes in the living room. At the time of the recovery, the firearm appeared to be fully functional, was designed to expel a projectile by the action of an explosion, had a barrel length of less than 12 inches, and was capable of being fired by the use of a single hand.

Witness-1 had stated that the firearm that SHELTON had possessed the previous night was an "Uzi" with an extended green magazine and that it had a black square appearance. When asked if the gun looked like a Glock that a law enforcement agent was carrying, Witness-1 stated yes. Witness-1 stated that SHELTON left the apartment the night before and returned. Witness-1 also stated that SHELTON stayed in the apartment over Witness-1's objections. Witness-1 stated words to the effect of he (Witness-1) does not get involved with weapons.

On August 20, 2019, SHELTON pled guilty in Superior Court for the District of Columbia case number 2019-CF2-010007 to Carrying a Pistol Without a License, which is punishable by more than one year imprisonment. On January 13, 2022, the Defendant was sentenced under the Youth Rehabilitation Act to six months' incarceration, execution of sentence suspended as to all but time served, and probation.

Based on the foregoing, your affiant submits that there is probable cause to believe that MALIK SHELTON violated 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C), which makes it a crime to possess with intent to distribute a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenyllethyl)-4-piperidninyl] propanamide (Fentanyl), a Schedule II narcotic drug-controlled substance.

Your affiant also submits that there is probable cause to believe that MALIK SHELTON violated 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C), which makes it a crime to possess with intent to distribute a mixture and substance containing a detectable amount of cocaine base, a Schedule II narcotic controlled substance.

Your affiant also submits that there is probable cause to believe that MALIK SHELTON violated 18 U.S.C. § 922(g)(1), which makes it a crime for a convicted felon to possess a firearm.

_____
OFFICER TYRONE LOWERY
METROPOLITAN POLICE DEPARMENT

*Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 28th day of May, 2022.*

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE